IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JADE DAHL, COURTNEY ZACHARIAH, JESSICA MOORE, CHRISTINA MERREIGHN, BRANDIE MCBRIDE, RENEE QUINTANILLA, LORI MCSORLEY, ANGELA HAGGARD, and ERIKA TURK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF KANSAS HOSPITAL AUTHORITY d/b/a UNIVERSITY OF KANSAS HEALTH SYSTEM, LAWRENCE MEMORIAL HOSPITAL d/b/a LMH HEALTH, and EPIC SYSTEMS CORPORATION,<br><br>Defendants. | Case No. 2:25-cv-02200-HLT-TJJ |

**DEFENDANT EPIC SYSTEMS CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Epic Systems Corporation ("Epic") files this Brief in Support of its Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (ECF No. 23, hereinafter the "Second Amended Complaint" or "SAC") for: (1) failure to allege facts sufficient to support Article III standing; and (2) failure to allege any cause of action upon which relief can be granted.

I.  INTRODUCTION

Epic is a healthcare software company that develops electronic health record (EHR) systems used by hospitals and health systems in the United States. In this lawsuit, Plaintiffs[1] seek

---

[1] This motion addresses Plaintiffs' allegations and not those of absent class members. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("Petitioners must allege and show that they personally have

1

to hold Epic liable, on theories of breach of contract and negligence, for a data incident that was perpetrated by an individual who was not employed by Epic on a system that Epic did not provide. Plaintiffs' Second Amended Complaint alleges that two separate data incidents occurred, described below as the "LMH Incident" and the "UKHA Incident." Plaintiffs blur the line between these two independent incidents in an attempt to hold Epic liable for alleged harm to which it has no connection. As set forth below, Plaintiffs' claims against Epic fail for two separate and independent reasons: (1) Plaintiffs cannot establish Article III standing under Rule 12(b)(1); and (2) Plaintiffs have not and cannot state a claim upon which relief may be granted against Epic under Rule 12(b)(6).

Plaintiffs allege they have been patients of University of Kansas Hospital Authority ("UKHA") and Lawrence Memorial Hospital ("LMH"). (SAC ¶¶ 29, 30, 37, 38, 44, 45, 58, 59, 65, 66, 72, 73, 79, 80, 86, 87). As part of procedures Plaintiffs underwent at LMH, Plaintiffs allege their LMH surgeons "took pre-operative and post-operative photographs of [their bodies] from multiple angles" (the "Plastic Surgery Photographs"), which were stored as part of Plaintiffs' LMH medical records. (*Id.* ¶¶ 32, 39, 46, 53, 60, 67, 74, 81, 88). Plaintiffs allege that a former UKHA employee (the "Clinician") "specifically targeted female patients" such as themselves, "who had undergone breast augmentation and related surgical procedures" at LMH to view Plaintiffs' Plastic Surgery Photographs. (*Id.* ¶ 121). As explained in UKHA's Brief in Support of its Motion to Dismiss, Clinician was employed by UKHA and provided services at Kansas Team Health, which

---

been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation marks omitted); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) (same). Epic reserves the right to challenge any putative class, including the elements of Rule 23, the scope of any putative class, and the Court's jurisdiction over non-resident putative class members. *See* Fed. R. Civ. P. 12(b)(2), 23.

is a collaboration between UKHA and LMH to provide care to athletes at LMH's West Lawrence Campus.

Plaintiffs' claims against Epic should be dismissed in their entirety for two independent reasons: (1) Plaintiffs do not have Article III standing, and (2) Plaintiffs fail to state a claim against Epic.

Plaintiffs allege that they were victims of two separate data incidents, involving distinct data systems and two distinct types of information. Specifically, Plaintiffs allege that, in connection with the data incident involving the LMH System, Clinician may have accessed their Plastic Surgery Photographs. Separately, Plaintiffs allege that in connection with a distinct data incident involving the UKHA System, Clinician may have accessed information such as "name, date of birth, address, phone number, insurance and billing information, social security number, and clinical information" (the "Identifying Information"). (*Id.* ¶¶ 126-129.) Notably, Plaintiffs do not allege that Clinician accessed their Plastic Surgery Photographs through the UKHA System provided by Epic, and Plaintiffs do not allege that Clinician misused their Identifying Information. As set forth below, and in UKHA's Brief in Support of its Motion to Dismiss, Plaintiffs' claims against Epic should be dismissed for lack of Article III standing.

Even if this Court were to find Article III standing, Plaintiffs' claims against Epic for breach of contract and negligence should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiffs' breach of contract claim fails to plausibly allege that Plaintiffs are intended third-party beneficiaries of an unidentified contract between UKHA and Epic. Similarly, Plaintiffs fail to allege any of the essential elements of their negligence claim against Epic. As such, both claims against Epic should be dismissed.

QB\310265.00461\99060964.1

## II. PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1) FOR LACK OF ARTICLE III STANDING

This case should be dismissed for lack of Article III standing because Plaintiffs do not allege that Clinician misused their Identifying Information, which Plaintiffs allege *may* have been accessed through the UKHA Data Incident involving the UKHA System. Instead, their alleged harm flows from their allegations that Clinician may have accessed their Plastic Surgery Photographs via the LMH System, which has no relation to Epic.

### A. LMH and UKHA Operate Separate Electronic Medical Record Systems, Each Involved in a Separate Alleged Data Incident, and Epic has no Connection to the LMH System.

Plaintiffs acknowledge that LMH and UKHA operate separate electronic medical record systems, and allege that Epic designed, developed, sold, and implemented only the UHKA System. (SAC ¶¶ 113, 116). Plaintiffs allege an unnamed third-party vendor designed, developed, sold, and implemented the LMH System. (*Id.* ¶¶ 116). Plaintiffs further allege two separate and independent data incidents occurred: one data incident involving the UKHA System, and one data incident involving the LMH System. (*Id.* ¶¶ 122, 126, 127, 129, 137, 138, 139, 142). The key distinction is that the LMH Data Incident may have involved the Plastic Surgery Photographs, while the UKHA Data Incident did not. Notably, Plaintiffs do not allege that their Plastic Surgery Photographs were accessed via the UKHA Data Incident. Furthermore, UKHA explains in its Brief and supporting Exhibit A that Clinician did not access Plaintiffs' Plastic Surgery Photographs via the UKHA System, and furthermore, none of the Plaintiffs' records in the UKHA System contain Plastic Surgery Photographs. (Exhibit A to UKHA's Brief in Support of its Motion to Dismiss (hereinafter "UKHA Exhibit A"), ¶¶ 13, 16, 17, 20, 21, 24, 25, 28, 29, 32-35, 38, 39, 41, 42, 45).

1. *UKHA System & Data Incident*

UKHA provided Clinician with credentials to access UKHA's electronic health record system licensed by Defendant Epic (the "UKHA System"). While Plaintiffs allege that Epic created and implemented the UKHA System, (SAC ¶ 113) they do not allege that Epic is responsible for hosting, configuring, or monitoring usage or access on the UKHA System.

On April 20, 2023, UKHA sent a letter to certain individuals (the "UKHA Notice"), which notified them that a UKHA employee "potentially accessed" their "name, date of birth, address, phone number, insurance and billing information, social security number, and clinical information." (*Id.* ¶¶ 126-129.) Plaintiffs do not allege that the UKHA Notice mentioned medical images or Plastic Surgery Photographs. (*Id.*). Additionally, UKHA has presented evidence that Plaintiffs' Plastic Surgery Photographs were not accessed through the UKHA System and none of Plaintiffs' records in the UKHA System contain Plastic Surgery Photographs. (UKHA Exhibit A ¶¶ 13, 16, 17, 20, 21, 24, 25, 28, 29, 32-35, 38, 39, 41, 42, 45).

2. *LMH System & Data Incident*

LMH separately provided Clinician with credentials to access LMH's electronic health record system, which was not provided by Epic but by a separate third-party vendor (the "LMH System"). Plaintiffs do not allege that Epic created, implemented, or otherwise had any involvement in or control over the LMH System. Instead, Plaintiffs acknowledge that the LMH System is a "non-Epic platform[]." (SAC ¶116.)

In April of 2023, LMH sent a letter to certain individuals (the "LMH Notice"), which notified them that a "Non-Employed User had used their access to LMH Health's EHR in a manner not permitted by LMH Health policy" and "may have" viewed their "name, date of birth, allergies, date(s) of service, treating physician, service location, clinical documentation, diagnostic reports,

5

medical conditions, and/or medical images." (*Id.* ¶ 142.) The LMH Notice expressly mentioned medical images. (*Id.*)

### B. Plaintiffs Do Not Allege that their Plastic Surgery Photographs Were Accessed Through the UKHA System.

Plaintiffs allege that Clinician used his LMH credentials to access the LMH System to view their Plastic Surgery Photographs. Plaintiffs specifically allege that the LMH System was not provided by Epic. Plaintiffs do not allege that their Plastic Surgery Photographs were accessed or viewed through the UKHA System licensed by Epic. As explained above, UKHA has presented evidence that Plaintiffs' Plastic Surgery Photographs were not accessed through the UKHA System. (UKHA Exhibit A ¶¶ 13, 16, 17, 20, 21, 24, 25, 28, 29, 32-35, 38, 39, 41, 42, 45). Therefore, Plaintiffs allege no connection whatsoever between Epic and the alleged harm.

>   1. *Plaintiffs Merreighn, Quintanilla, and McSorley Allege their Plastic Surgery Photographs Were Accessed Through the LMH System, Not the UKHA System, and Make No Allegations Relating to the UKHA System.*

Plaintiff Merreighn alleges that she received the LMH Notice but does not allege that she received the UKHA Notice, or that she ever communicated with UKHA regarding the UKHA Data Incident. (SAC ¶¶ 172-177). Instead, Merreighn alleges that "LMH confirmed to Plaintiff Merreighn that . . . Clinician accessed her PHI at LMH, including her records at Plastic Surgery Specialists of Lawrence" and possibly her "medical images." (*Id.* ¶ 175). That is, Merreighn only alleges that she was damaged as a result of the LMH Data Incident, not the UKHA Data Incident, and as explained above, Epic did not create or implement the LMH System. Furthermore, Merreighn does not allege that the Clinician accessed any of Merreighn's medical records – or Plastic Surgery Photographs – via the UKHA System licensed by Epic. Finally, UKHA has presented evidence that Clinician did not access Plastic Surgery Photographs of Merreighn via the

6

UKHA System, and that Merreighn's records in the UKHA System do not contain Plastic Surgery Photographs.  (UKHA Exhibit A ¶¶ 25, 28).

Similarly, Plaintiffs Quintanilla and McSorley do not allege that they received the UKHA Notice, or that they communicated with UKHA about the UKHA Data Incident.  (SAC ¶¶ 184-198).  Quintanilla and McSorley also do not allege that they received the LMH Notice.  Instead, Quintanilla and McSorley each allege that LMH "represented to" her that "LMH sent her" the LMH Notice.  (*Id.* ¶¶ 185, 190).  Although they do not allege that they received the LMH Notice, Quintanilla and McSorley allege that LMH confirmed that "Clinician accessed her PHI at LMH, including her records and [sic] Plastic Surgery Specialists of Lawrence," including possibly her "medical images." (*Id*. at ¶ 184, 189).  That is, Quintanilla and McSorley only allege that they were damaged as a result of the LMH Data Incident, to which Epic has no connection.  Finally, UKHA has presented evidence that Clinician did not access Plastic Surgery Photographs for Quintanilla or McSorley via the UKHA System, and there are no Plastic Surgery Photographs in the UKHA System for Quintanilla or McSorley.  (UKHA Exhibit A ¶¶ 33-35, 38).

> 2. *Plaintiffs Dahl, Zachariah, Moore, Haggard, McBride, and Turk Do Not Allege that their Plastic Surgery Photographs Were Accessed, Through the UKHA System or Otherwise.*

Plaintiffs Dahl, Zachariah, and Moore do not allege that their Plastic Surgery Photographs were accessed.  Instead, Plaintiffs Dahl, Zachariah and Moore allege that they received the UKHA Notice only, and not the LMH Notice.  (SAC ¶¶ 145-171).  Plaintiffs Dahl and Zachariah allege that, after receiving the UKHA Notice, "[o]ut of an abundance of caution" each contacted "the office of her plastic surgeon at LMH to make sure the Privacy Invasions did not involve any

medical files associated with her procedures at LMH." (*Id.* ¶ 146, 161.)[2] During that call, Dahl's LMH surgeon allegedly informed her that Clinician had searched her name and "was able to access her medical records at LMH." (*Id.* ¶¶ 146, 147.) According to Zachariah, "LMH would not share any details regarding the Privacy Invasions." (*Id.* ¶ 162.) Neither Dahl nor Zachariah allege that she was told her Plastic Surgery Photographs were accessed. (*Id.* ¶¶ 159-165). Dahl alleges UKHA provided her with a packet of information the Clinician could have accessed – but *does not* allege that packet included any images. (*Id.* ¶¶ 151-153.) Most importantly, Dahl, Zachariah, and Moore do not allege that Clinician accessed any Plastic Surgery Photographs via the UKHA System provided by Epic. Instead, these Plaintiffs allege only that Clinician potentially accessed their Identifying Information via the UKHA System. (*Id*. ¶¶ 145-171). Finally, UKHA has presented evidence that Clinician did not access Plastic Surgery Photographs of Dahl, Zachariah, or Moore via the UKHA System, and there are no Plastic Surgery Photographs in the UKHA System for Dahl, Zachariah, or Moore. (UKHA Exhibit A ¶¶ 13, 16, 17, 20, 21, 24).

Although Plaintiff Haggard alleges that she received the LMH Notice, she does not allege that her Plastic Surgery Photographs were accessed. Instead, she alleges that LMH confirmed that "Clinician accessed her PHI at LMH, including her records and [sic] Plastic Surgery Specialists of Lawrence," and that LMH confirmed that the information Clinician accessed includes her "name, date of birth, allergies, date(s) of service, treating physician, service location, clinical documentation, diagnostic reports, and/or medical conditions." (SAC ¶195). Furthermore, Plaintiff Haggard does not allege that she received the UKHA Notice and makes no allegations whatsoever with respect to the UKHA System. (*Id.* ¶¶ 194-198). Finally, UKHA has presented

---

[2] Neither Dahl nor Zachariah explains *why* the UKHA Notice provoked her to call LMH. (SAC ¶¶ 145-171).

evidence that Clinician did not access Plastic Surgery Photographs of Haggard via the UKHA System, and there are no Plastic Surgery Photographs in the UKHA System for Haggard. (UKHA Exhibit A ¶¶ 39, 41).

Plaintiffs McBride and Turk both allege that they received the UKHA Notice. (SAC ¶¶ 178, 199). Turk alleges that she also received the LMH Notice. (*Id*. ¶ 179). McBride does not allege that she received the LMH Notice but claims that LMH "represented to her" that LMH sent her the LMH Notice. (*Id*. ¶ 199). Both allege that LMH confirmed that "Clinician accessed her PHI at LMH, including . . . her 'name, date of birth, allergies, date(s) of service, treating physician, service location, clinical documentation, diagnostic reports, and/or medical conditions." (*Id*. ¶¶ 180, 200). Turk further alleges that UKHA confirmed that "Clinician accessed her PHI at KU Health . . . including 'that which is maintained in our electronic health record, which includes demographics, insurance and billing information, social security and/or clinical information." (*Id*. ¶¶ 201). Neither McBride nor Turk alleges that her Plastic Surgery Photographs were accessed, through the UKHA System or otherwise. As with the other Plaintiffs, UKHA has presented evidence that Clinician did not access Plastic Surgery Photographs of McBride or Turk via the UKHA System, and there are no Plastic Surgery Photographs in the UKHA System for McBride or Turk. (UKHA Exhibit A ¶¶ 29, 32, 42, 45).

The following chart summarizes each Plaintiff's allegations with respect to the UKHA Data Incident and the LMH Data Incident:

| Plaintiff | Alleges Received UKHA notice | Alleges Received LMH notice | Alleges Plastic Surgery Photographs were accessed from LMH system | Alleges Plastic Surgery Photographs were accessed from UKHA system |
|---|---|---|---|---|
| Merreighn | | x | x | |
| Quintanilla | | | x | |
| McSorley | | | x | |
| Dahl | x | | | |
| Zachariah | x | | | |
| Moore | x | | | |
| Haggard | | x | | |
| McBride | x | | | |
| Turk | x | x | | |

In sum, none of the Plaintiffs allege that their Plastic Surgery Photographs were accessed via the UKHA System licensed by Epic. Specifically, the Plaintiffs who allege that they were part of the UKHA Data Incident, which is the only alleged data incident involving the UKHA System, do not allege that their Plastic Surgery Photographs were accessed whatsoever, through the UKHA System or otherwise.

**C. Plaintiffs Cannot Establish Article III Standing Based on the Information Allegedly Accessed Through the UKHA System.**

As set forth in UKHA's Motion to Dismiss and Exhibit A in support thereof,[3] Plaintiffs cannot establish Article III standing based on the Identifying Information allegedly accessed through the UKHA System provided by Epic. LMH and UKHA operate separate electronic medical record systems. Plaintiffs do not allege that Clinician accessed their Plastic Surgery Photographs through the UKHA System provided by Epic. Instead, the allegations are the clinician only "potentially accessed" certain information such as "name, date of birth, address, phone number, insurance and billing information, social security number, and clinical

---

[3] The 12(b)(1) arguments regarding Article III standing set forth in UKHA's Brief in Support of its Motion to Dismiss, including Exhibit A thereto, are incorporated as if fully set forth herein.

10

information" in the UKHA System. (SAC ¶¶ 126-129.) But Plaintiffs do not allege Clinician misused this Identifying Information. As such, as explained in UKHA's Motion to Dismiss, Plaintiffs cannot establish Article III Standing based on the information allegedly accessed through the UKHA System. Indeed, Epic is *even further* removed from Plaintiffs' alleged "injuries" than UKHA. Accordingly, the Court should dismiss Plaintiffs' claims against Epic for lack of Article III standing.

### III. PLAINTIFFS'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM AGAINST EPIC

Plaintiffs filed their 14-count Second Amended Complaint against UKHA, LMH, and Epic. Only two counts – Counts VI and VII, for breach of contract and negligence, respectively – are asserted against Epic. As set forth below, Plaintiffs have not and cannot allege the essential elements of either claim against Epic. Therefore, to the extent Plaintiffs' claims survive defendants' 12(b)(1) motion, both claims against Epic should be dismissed under Rule 12(b)(6).

Rule 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief may be granted. Under Rule 12(b)(6), the court must assume that the factual allegations in the complaint are true, but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor must a court accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663 (citing *Twombly*, 550 U.S. at 555). In other words, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664 (emphasis added). To defeat a Rule 12(b)(6) motion, a plaintiff must "nudge[ ] their claims across the line from conceivable to plausible" by pleading "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A

plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Here, Plaintiffs' claims against Epic are based entirely upon legal conclusions, speculation, and unsupported allegations "on information and belief" and therefore should be dismissed. Even assuming the paltry facts that are alleged to be true, Plaintiffs fail to state a claim upon which relief may be granted.

### A. Plaintiffs Fail to State a Claim for Breach of Contract against Epic

In Count VI, Plaintiffs allege purely "on information and belief" that Plaintiffs are "intended beneficiaries" of "one or more" contracts between Epic and UKHA. (SAC ¶¶ 325-326). Plaintiffs do not identify any basis upon which they are entitled to enforce any contract between Epic and UKHA, let alone any particular term in a contract that affords Plaintiffs third-party beneficiary status. As a result, Count VI against Epic should be dismissed.

Kansas courts recognize two categories of third-party beneficiaries: intended and incidental. Only *intended* third-party beneficiaries can sue for breach of contract. *First Nat. Bancshares of Beloit, Inc.*, 853 F. Supp. at 1341. An intended beneficiary is someone "who the contracting parties intended should receive *a direct benefit* from the contract." *First Nat. Bancshares of Beloit, Inc. v. Geisel*, 853 F. Supp. 1337, 1341 (D. Kan. 1994) (emphasis added). "Donee and creditor beneficiaries are intended beneficiaries and may sue to enforce a contract; incidental beneficiaries may not." *Noller v. GMC Truck & Coach Division, General Motors Corp.*, 244 Kan. 612, 618, 772 P.2d 271, 275 (1989). A donee beneficiary is the recipient of a gift, and a creditor beneficiary is a third party to whom a duty is expressly owed under the terms of the contract at issue. *Noller*, 244 Kan. at 618. Furthermore, the contracting parties' intent to benefit a third person must be clearly expressed in the contract. *Rigby v. Clinical Reference Lab'y, Inc.*, 995 F. Supp. 1217, 1226 (D. Kan. 1998) (emphasis added). Incidental beneficiaries cannot enforce a contract. *Sinclair Oil Corp. v. Sylvan State Bank*, 894 F. Supp. 1470, 1478 (D. Kan. 1995). "A

person is an incidental beneficiary if the benefits accruing to him are merely incidental to the performance of the contract." *Sinclair Oil Corp.*, 894 F. Supp. at 1478.

In *Holt v. Wesley Medical Center, LLC*, 2004 WL 1636541, *5-6 (D. Kan. July 19, 2004), this Court found that a physician's patients were not intended beneficiaries of an employment contract between the physician and hospital, and therefore the patients could not sue to enforce the contract. The Plaintiffs argued that, because the employment contract stated that the physician would receive "appropriate teaching and clinical supervision," and would "participate in the provision of safe and compassionate patient care," they, as patients, were intended third party beneficiaries of the contract. However, the Court disagreed, explaining that the "bare knowledge that a third party will benefit from a contract is not sufficient," and noted that the mere fact that the employment agreement mentions patient care is not sufficient to establish that plaintiffs were intended beneficiaries. Because the employment agreement did not contain any language "designating plaintiffs as intended beneficiaries," and plaintiffs were, "at best, incidental beneficiaries" who cannot "enforce the contract for their own benefit." *Id.* at *5-6.

Similarly, in this case, Plaintiffs have not plausibly alleged that they are intended beneficiaries of any agreement between UKHA and Epic.[4] While Plaintiffs allege in a general and conclusory manner that they are "intended beneficiaries of agreements" between Epic and UKHA, they do not allege any facts suggesting that a contract between Epic and UKHA specifically designates them as intended beneficiaries or expressly imposes upon Epic a specific duty to Plaintiffs. (SAC ¶ 325). Instead, Plaintiffs rely on the fact that they, as patients, might be incidental beneficiaries of a contract by which Epic provided an EMR system to UKHA. However,

---

[4] Plaintiffs do not claim to be donor beneficiaries, and do not allege that they are creditor beneficiaries.

13

just as the patients in *Holt* were not intended third party beneficiaries of an employment contract between the hospital and a physician, Plaintiffs here are not intended third party beneficiaries of a contract between UKHA and Epic for the provision of information technology.   Plaintiffs fail to allege any basis upon which a contract between UKHA and Epic plausibly imposes any contractual duty upon Epic with respect to Plaintiffs, and therefore Plaintiffs cannot state a breach of contract claim against Epic.

Even if Plaintiffs could establish that they were intended third-party beneficiaries of a contract between Epic and UKHA, they fail to allege any facts in support of their legal conclusions that Epic breached any such duty to Plaintiffs, or that Epic's breach caused any alleged damages. Instead, Plaintiffs attempt to bootstrap their claims upon the fact that two data breaches occurred, and therefore, again without distinguishing between the two data incidents, Plaintiffs assume that Epic breached a duty, and that such breach caused Plaintiffs' harm.  Plaintiffs allege no facts in support of these conclusory and insufficient allegations.

Accordingly, Count IV against Epic should be dismissed.

### B.     Plaintiffs Fail to State a Claim for Negligence Against Epic

Under Kansas law, the elements of a negligence claim are as follows: "(1) a duty owed to the plaintiff, (2) breach of that duty, (3) causation between the breach of duty and the injury to plaintiff, and (4) damages suffered by the plaintiff." *Patterson v. Cowley Cnty.*, 307 Kan. 616, 622, 413 P.3d 432, 437 (2018). Plaintiffs fail to allege all four elements of this claim.

*1.     Plaintiffs cannot plead that Epic owed them a duty of care.*

In Count VII, Plaintiffs allege Epic owed them a "duty to exercise reasonable care in designing, configuring, building, implementing, upgrading and maintaining an EHR platform for the storage, maintenance, and transmission of Plaintiffs' PII and PHI" and breached that duty by allegedly failing to provide an EHR system that would alert UKHA to Clinician's "snooping."

14

(SAC ¶¶ 333, 336.) Plaintiffs fail to allege any basis for such a duty, and do not allege any relationship between Plaintiffs and Epic that would give rise to a duty of care. Notably, Plaintiffs do not allege they had a direct relationship with Epic.

Plaintiffs seem to rely on the fact that Plaintiffs allege a relationship with UKHA, which in turn had a relationship with Epic. However, Kansas does "not recognize a duty by a healthcare provider to safeguard, protect, and maintain the confidentiality of a patient's medical records." *T.R. v. Univ. of Kansas Med. Ctr.*, 551 P.3d 800 (Kan. Ct. App. 2024), review denied (Dec. 23, 2024). Because Kansas law does not recognize a common-law duty of a provider to safeguard its patients' medical records, it surely does not recognize a duty owed by an entity that has no direct relationship to those patients. As such, Count VII against Epic should be dismissed for failure to plead a cognizable duty owed to Plaintiffs by Epic.

   2. *Plaintiffs fail to plead the breach and causation elements of their claim against Epic.*

With respect to the breach and causation elements of their negligence claim, Plaintiffs fail to allege the requisite facts in support of these conclusory allegations. For instance, they do not allege what industry standards Epic failed to meet, or how Epic allegedly fell short of any industry standards. Instead, Plaintiffs again rely on the fact that the data incidents occurred to support their conclusion that Epic's system must have been subpar, which effectively seeks to impose a strict liability standard on Epic, despite the fact that Plaintiffs do not allege a strict liability tort. Such conclusory allegations do not satisfy the *Iqbal/Twombly* standard and are not sufficient to state a claim for negligence.

Furthermore, despite the fact that Plaintiffs do not allege that Epic had any connection to the LMH System or the LMH Data Incident, Plaintiffs continue to impermissibly rely on the alleged harm resulting from the LMH Data Incident to support their claims against Epic. Plaintiffs

15

fail to distinguish between the damages Plaintiffs allege were caused by the UKHA Data Incident and the damages they allege were caused by the LMH Data Incident. Plaintiffs' conclusory allegations relating to the general damages they allege to have sustained as a result of both data incidents together are insufficient to allege causation as to Epic.

3. *Plaintiffs do not allege any damages recoverable under a negligence theory.*

Plaintiffs allege that they have suffered generally, "severe emotional, psychological and other injury . . . including symptoms typical of Post-Traumatic Stress Syndrome . . ." (SAC ¶ 342). While Kansas law permits recovery for the negligent infliction of emotional distress[5], courts have "long held that a plaintiff cannot recover for emotional distress caused by the defendant's negligence unless that emotional distress is accompanied by or results in physical injury to the plaintiff." *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 628, 349 P.3d 1283, 1285 (2015). The qualifying physical injury "must directly result from the emotional distress allegedly caused by the defendant's negligence and must appear within a short span of time after the emotional disturbance." *Id. citing Hoard v. Shawnee Mission Medical Center*, 233 Ka. 267, 279, 662 P.2d 1214 (1983). Physical symptoms of emotional distress, including those associated with PTSD, are not sufficient. *Majors*, 51 Kan. App. 2d at 1285. Indeed, Kansas courts have held that typical PTSD symptoms, such as those alleged by Plaintiffs in this case, do not constitute physical injuries for purposes of stating a negligent infliction of emotional distress claim:

> When determining if injuries may be classified as physical injuries under a NIED cause of action, Kansas courts have addressed various types of symptoms. *See, e.g.,*

---

[5] Plaintiffs attempt to state a claim for negligence, not negligent infliction of emotional distress; however, case law analyzing the physical injury requirement to state a claim under a negligent infliction of emotional distress theory is equally appliable and instructive. *See, e.g., Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 274 662 P. 2d 1214, 1219-1220 (Kan. 1983)("It has long been the general rule in Kansas that there can be no recovery for emotional distress suffered by the plaintiff which is caused by the negligence of the defendant unless it is accompanied by or results in physical injury to the plaintiff.").

QB\310265.00461\99060964.1

*Anderson,* 242 Kan. at 860 [752 P.2d 667] (shock, emotional pain, feelings of guilt, nightmares, and depression due to witnessing accident are not compensable physical injuries when there is no actual physical injury); *Hopkins v. State,* 237 Kan. 601, 612–13, 702 P.2d 311 (1985) (weight gain is not a compensable physical ***629** injury); *Reynolds v. Highland Manor, Inc.,* 24 Kan.App.2d 859, 861–62, 954 P.2d 11 (1998) (plaintiff failed to meet physical injury requirement when she suffered headaches, diarrhea, nausea, crying, shaking, sexual problems, and feelings of stress, all caused by anxiety); *Dill v. Barnett Funeral Home, Inc.,* No. 90,653 [—— Kan.App. 2d ——], 2004 WL 292124, at *8 (Kan.App.2004) (unpublished opinion), *rev. denied* 278 Kan. 844 (2004) (lack of sleep, recurring dreams, and general fatigue not a compensable physical injury)." *Williams v. Taco Tico, Inc.,* No. 106,088, —— Kan.App.2d ——, 2012 WL 2045369, at *6 (Kan.App.2012) (unpublished opinion) (finding "PTSD, depression, anxiety, insomnia, and nightmares do not qualify as physical injuries"), *rev. denied* 296 Kan. 1136 (2013).

*Majors*, 51 Kan. App. 2d at 1286. Furthermore, as set forth above, Plaintiffs fail to specify what damages were allegedly caused by the UKHA Data Incident, as opposed to the LMH Data Incident.

Because Plaintiffs have not alleged a physical injury, they cannot recover for emotional distress allegedly caused by Epic's negligence. *Majors*, 51 Kan. App.2d at 628. Indeed, Plaintiffs have not alleged any damages that are recoverable under a negligence theory. Paragraphs 342 and 343 allege emotional distress and risk of future harm, neither of which are recoverable here. Plaintiffs allege, in a vague and conclusory manner, that they incurred "out-of-pocket expenses" to "prevent, detect, and remediate fraud, identity theft, and other misuse of their data." (SAC ¶ 253). Once again, Plaintiffs do not allege any facts to indicate whether these damages are connected to the UKHA Data Incident or the LMH Data Incident, nor do Plaintiffs allege any basis upon which they could be recovered under a theory of negligence.

## IV.  CONCLUSION

For the reasons set forth herein, and the Rule 12(b)(1) arguments in UKHA's Brief in Support of its Motion to Dismiss, Plaintiffs have failed to plead a cognizable injury that is traceable to Epic. Even if Plaintiffs could establish Article III standing, their claims for breach of contract

17

and negligence against Epic fail because they cannot plead the essential elements of their claims. Epic therefore respectfully requests the Court dismiss Plaintiffs' claims against Epic with prejudice.

Respectfully submitted,

QUARLES & BRADY LLP

/s/ *Elizabeth S. Silker*
Elizabeth S. Silker, #78988
8235 Forsyth Blvd., 10th Floor
Clayton, MO 63105
Elizabeth.Silker@quarles.com
Telephone: 314.696.5114

*Attorneys for Defendant Epic Systems Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the 17th day of October, 2025. Notice of this filing will be sent to all counsel of record by the Court's electronic filing system. Parties may access this filing through the Court's electronic filing.

/s/ *Elizabeth S. Silker*
*Attorney for Epic Systems Corporation*