# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

<table>
<tr><td>

JADE DAHL, COURTNEY ZACHARIAH, JESSICA MOORE, CHRISTINA MERREIGHN, BRANDIE MCBRIDE, RENEE QUINTANILLA, LORI MCSORLEY, ANGELA HAGGARD, and ERIKA TURK, individually and on behalf of all others similarly situated,

          Plaintiffs,

v.

UNIVERSITY OF KANSAS HOSPITAL AUTHORITY d/b/a UNIVERSITY OF KANSAS HEALTH SYSTEM, LAWRENCE MEMORIAL HOSPITAL d/b/a LMH HEALTH, and EPIC SYSTEMS CORPORATION,

          Defendants.

</td><td>

Case No. 25-cv-2200-HLT-JBW

</td></tr>
</table>

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Plaintiffs' Motion to Compel Further Deposition Testimony and for Remedial Relief Regarding Defendant KU Health's Improper Deposition Objections (Dkt. 55). Plaintiffs request an order, pursuant to Fed. R. Civ. P. 37(a)(3)(B)(i), compelling Defendant University of Kansas Hospital Authority d/b/a University of Kansas Health System ("KU Health") to produce its employee, Terri Thompson, to answer questions she did not answer during her deposition as fact witness and Rule 30(b)(6) witness for purposes of jurisdictional discovery. As explained below, Plaintiffs' motion is granted in part and denied in part. The deposition of Ms. Thompson shall be reconvened **within thirty (30) days of this Order** at a mutually-agreed date, time, and location, and it shall not exceed **four (4) hours** in length. At the reconvened deposition, Ms. Thompson shall answer Question Nos. 1–3, 5–7, 9, 14, and 17 as

identified in Plaintiffs' Exhibit 5 (Dkt. 61-2), and related follow-up questions. In addition, counsel for KU Health is directed not to make improper speaking objections as described in more detail in this Order.

## I.       Nature of Case and Background of Discovery Dispute

Plaintiffs were patients of Plastic Surgery Specialists of Lawrence, an affiliate of Lawrence Memorial Hospital d/b/a LMH Health ("LMH"). They filed this lawsuit, alleging their protected health information, medical files, and clinical plastic surgery photographs were accessed by an athletic trainer employed by KU Health ("Clinician"), who had no affiliation with LMH or its plastic surgery clinic and who never provided treatment to Plaintiffs.[1] Plaintiffs allege that over the course of more than two years, Clinician used his credentials issued by KU Health to perpetrate the privacy invasions by accessing their files through an electronic health records ("EHR") portal developed by Epic Systems Corporation ("Epic") that permitted patient data sharing between unrelated health systems.[2]

All three defendants filed motions to dismiss on October 17, 2025 (Dkts. 31, 32, 33). KU Health's motion (Dkt. 32) is at issue here. KU Health sought dismissal in part for lack of subject-matter jurisdiction by asserting a factual challenge to Plaintiffs' Article III standing.[3] KU Health contends it did not possess or have access to Plaintiffs' plastic surgery photographs, and Clinician did not access those photographs through KU Health's EHR system. KU Health argues therefore any alleged injury resulting from Clinician's viewing of the plastic surgery photographs is not an

---

[1] Second Am. Compl. (Dkt. 23) at ¶ 1.

[2] *Id*. at ¶¶ 2–5.

[3] KU Health's Mot. to Dismiss (Dkt. 32) at 5–6.

injury traceable to KU Health or its EHR system.[4]

Important for this Motion to Compel, KU Health attached the Declaration of Terri Thompson (Dkt. 32-1) in support of its motion to dismiss. She is its System Director, Privacy Service & Privacy Officer. Ms. Thompson stated in her declaration that she is responsible for, among other things, the oversight of KU Health's Privacy Services Department and the monitoring of access to KU Health's EHR and that department's investigation of and reporting related to incidents involving KU Health's EHR.[5] She also stated:

> As part of [Clinician's] employment, [KU Health] provided Clinician with credentials to access KU Health's [EHR] system licensed by [Epic] but did not provide Clinician with credentials to access any other health record systems.
>
> The [KU Health] EHR System has a feature known as Care Everywhere, which facilitates continuity of care by allowing separate hospitals and provider entities to share medical records across their separate electronic record system instances.
>
> LMH separately provided Clinician with credentials to access LMH's electronic health record system licensed by a separate third-party vendor, not Defendant Epic Systems Corporation.
>
> [KU Health] has no visibility into or control over LMH's EHR System. Accordingly, [KU Health] had not visibility into Clinician's activity while utilizing the Clinician's LMH credentials to access the LMH EHR System.[6]
>
> The Clinician only accessed the following types of information through the [KU Health] EHR System: "name, date of birth, address, phone number, insurance and billing information, social security number, and clinical information" . . . Clinician did not access any Plastic Surgery Photos of [Plaintiffs].[7]

---

[4] *Id.*

[5] Thompson Decl. (Dkt. 32-1) at ¶ 3.

[6] *Id.* at ¶¶ 8–11.

[7] *Id.* at ¶¶ 12–13, 17, 21, 25, 29, 33, 35, 39, 42.

In order to respond to KU Health's motion to dismiss, on November 12, 2025, Plaintiffs filed an Unopposed Motion for Limited Jurisdictional Discovery (Dkt. 36) requesting an order permitting limited jurisdictional discovery related to KU Health's factual challenge to Plaintiffs' standing, as raised in its motion to dismiss.[8]

On November 14, 2025, the Court entered an Order (Dkt. 37) granting Plaintiffs leave to serve the requested unopposed discovery upon KU Health. The Court deferred ruling at that time on any disagreements regarding the appropriate scope and time frame for the jurisdictional discovery and whether non-jurisdictional discovery should proceed prior to a ruling on the motions to dismiss.

On November 20, 2025, Plaintiffs served their jurisdictional discovery requests upon KU Health, which included: its First Set of Interrogatories and First Set of Requests for Production of Documents (together, the "Jurisdictional Discovery Requests"); a Notice of Deposition of Terri Thompson; and a Notice of Corporate Representative Deposition pursuant to Fed. R. Civ. P. 30(b)(6).[9] This initial Rule 30(b)(6) Notice identified four deposition topics inquiring about KU Health's and LMH's collaboration to provide services to athletes, the Clinician's access to protected health information for each Plaintiff, any investigation conducted regarding the privacy invasions, and the factual and legal bases for KU Health's interrogatory responses.[10] While KU

---

[8] Defendant KU Health did not oppose Plaintiffs' motion for limited jurisdictional discovery.

[9] Pl. Certif. of Service of Disc. (Dkt. 40). Pl.' Notice of Rule 30(b)(6) Dep. (Dkt. 58-8). Plaintiffs initially sought and were granted leave to serve six interrogatories and ten requests for production upon KU Health. *See* Pl. First Set of Interrogs. to KU Health (Dkt. 58-6); Pl. First RFPs to KU Health (Dkt. 58-4).

[10] Pl. Notice of Rule 30(b)(6) Dep. (Dkt. 58-8) at 6-7. Topics 1-2 each had three subparts and Topic 3 had four subparts.

Health apparently made objections to the initial Rule 30(b)(6) Notice,[11] those objections were not provided to the Court.

On December 2, 2025, the Court conducted a telephone status conference regarding the scope and timeframe for limited jurisdictional discovery. Following the conference, on December 5, 2025, the Court issued a Status Conference Order (the "Status Conference Order"), which stated, in part:

> Highly summarized, the Court indicated its view that the scope of jurisdictional discovery must be limited to KU Health's Article III standing factual attack in its motion to dismiss that it did not possess or have access to Plaintiffs' plastic surgery photographs, and this would necessarily include discovery into statements included in the Thompson Declaration (ECF No. 32-1) offered in support of KU Health's motion to dismiss.[12]

The Status Conference Order required KU Health to serve its responses, answers, and objections to the Jurisdictional Discovery Requests and the Rule 30(b)(6) Notice deposition topics by December 22, 2025. The Status Conference Order required the parties to "confer in good faith regarding their jurisdictional discovery disputes both before <u>and</u> after KU Health serves its responses, answers, and objections."[13] Any motion to compel discovery was due within 30 days after KU Health served its responses, answers, and objections to the Jurisdictional Discovery Requests and the Rule 30(b)(6) Notice deposition topics.

On December 8, 2025, Plaintiffs served amended Jurisdictional Discovery Requests upon

---

[11] KU Health's counsel began the Thompson deposition by stating "I want to incorporate our objections to the first amended set of deposition topics. I know that a second set of topics was served yesterday afternoon. Obviously we haven't had a chance to issue objections to the same. I want to incorporate our objections to the first set. I don't anticipate that that's going to be an issue." Thompson Dep. Tr. at 8:15-22 (Dkt. 58-3). Although Dkt. 58-3 only contains excerpts of the deposition transcript, counsel provided the full transcript at the Court's request.

[12] Dec. 5, 2025 Status Conf. Order (Dkt. 48).

[13] *Id*.

KU Health consisting of eight requests for production and two interrogatories.[14] On December 22, 2025, KU Health served its responses and objections to Plaintiffs' amended Jurisdictional Discovery Requests.[15] On January 20, 2026, Plaintiffs served their second amended deposition notices setting the depositions of Ms. Thompson and KU Health's Rule 30(b)(6) corporate representative for January 21, 2026. Plaintiffs' second amended notice for KU Health's Rule 30(b)(6) corporate representative ("Amended 30(b)(6) Notice") identified four deposition topics:

1.  The electronic Systems that the Clinician had access to at KU Health and the Clinician's credentials to access Lawrence Memorial Hospital's EHR System.

2.  The steps You took to confirm that the Clinician did not access Plaintiffs' Plastic Surgery Photographs via Your EHR System and the basis for Your understanding that the Clinician accessed Plaintiffs' Plastic Surgery Photographs through Lawrence Memorial Hospital's HER System.

3.  Your investigation into or determination of where Plaintiffs' Plastic Surgery Photographs were stored and how You determined the Clinician did not access Plaintiffs' Plastic Surgery Photographs via Your EHR System.

4. The factual and legal bases of KU Health's Responses to Plaintiffs' Amended Interrogatories Nos. 1-2, including the factual bases, documents, and individuals relied upon in formulating each response.[16]

Other than KU Health counsel's statement at the beginning of Ms. Thompson's deposition incorporating the objections to the first set of deposition topics,[17] the record does not indicate that any objections were made to the Amended 30(b)(6) Notice. The Amended 30(b)(6) Notice states in footnote 1 that it is being served "[i]n light of the Court's Order and the parties' conferral, and

---

[14] Certif. of Service (Dkt. 49). *See* Pl. Am. First Set of Interrogs. to KU Health (Dkt. 58-7); Pl. Am. First RFPs to KU Health (Dkt. 58-5).

[15] Certif. of Service (Dkt. 53).

[16] Pl. Second Am. Notice of Rule 30(b)(6) Dep. (Dkt. 61-1).

[17] *See* fn. 11 *supra*.

in the interests of compromise."[18] Plaintiffs' counsel stated on the record that the Amended 30(b)(6) Notice tracked the agreed scope of topics, apparently in reliance on written communications between counsel.[19]

On January 21, 2026, KU Health produced Ms. Thompson, and she was deposed both in her individual capacity and as KU Health's corporate representative. During Ms. Thompson's deposition, Plaintiffs' counsel asked 18 questions to which counsel for KU Health objected and instructed Ms. Thompson not to answer based on the Court's order limiting the scope of jurisdictional discovery. Plaintiffs filed their motion the following day on January 22, 2026.

## II.    Timeliness and Duty to Confer

Plaintiffs acknowledge that January 21, 2026 was the deadline for filing motions to compel in connection with jurisdictional discovery but argue they understood the deadline to apply to written discovery disputes (e.g., interrogatories and requests for production) and did not anticipate the need for motion practice regarding deposition testimony. KU Health does not raise untimeliness as grounds for denying the motion. The Court excuses Plaintiffs' minor one-day delay in filing the motion to compel. KU Health, however, does argue the motion should be denied because Plaintiffs failed to confer before filing it.[20]

The Court notes there would have been only a short amount of time for Plaintiffs to confer after Ms. Thompson's deposition concluded at 4:15 p.m. on January 21, 2026, which was the same

---

[18] Pl. Second Am. Notice of Rule 30(b)(6) Dep. (Dkt. 61-1).

[19] Thompson Dep. Tr. 32:9–24 (Dkt. 58-3).

[20] KU Health also states Plaintiffs refused to request a pre-motion conference. However, the Court's Status Conference Order stated the December 2, 2025 status conference satisfied the D. Kan. Rule 37.1(a) pre-motion requirement and no additional conference was required prior to filing the motion. Dkt. 48 at 3 n.3.

day as the deadline for filing any motion to compel jurisdictional discovery. Moreover, based upon its review of the deposition transcript, the Court finds counsel repeatedly conferred on these issues on the record during the deposition. Shortly after the first time KU Health's counsel instructed Ms. Thompson not to answer, Plaintiffs' counsel proposed contacting the magistrate judge's chambers:[21]

> We may want to see if we can reach [the magistrate judge's] chambers. I just – I'm worried if we're going to go down this path all day, it's going to be a waste of time. And I don't want to make everyone leave and come back. So maybe we should try to get her on the phone.[22]

Counsel for KU Health agreed to contact Chambers but suggested deferring until later:

> I think that we're probably going to run into this throughout the deposition today. So it might make sense to keep a list of questions and topics that you're trying to question on that I'm instructing not to answer, so we can get clear instruction on the outstanding issues, because I'm kind of worried that if we bring one thing to the Judge's attention now, we might end up with something later in the afternoon.[23]
>
> ***
>
> We're instructing the witness not to answer. If you want -- so the question, if you guys want to go to the Judge, I personally don't want to either. But if you want to go to the Judge, I think it might make sense to make a list of things that we need to ask the Judge about to get some specific clarification because I anticipate that we're going to disagree probably repeatedly throughout this deposition today. So I would say let's keep going. Let's see where we end up. And then we can get the Judge on the phone maybe after lunch or something.[24]

Counsel also attempted to confer at the conclusion of the deposition regarding the objections.[25] In

---

[21] Thompson Dep. Tr. 50:2–51:17.

[22] *Id*. at 50:2–7.

[23] *Id*. at 50:8–19.

[24] *Id*. at 51:5–18.

[25] *Id*. at 207:11–209:9. At the conclusion of the deposition, counsel attempted to confer over the objections but due to the lack of Realtime transcription, they could not reference all the questions at issue and no one had kept a running list of questions to discuss.

light of these exchanges during the deposition and the short period of time between the conclusion of the deposition and Plaintiffs filing their motion, the Court will not deny Plaintiffs' motion for failure to confer prior to filing it.

### III.    Summary of the Parties' Arguments

Plaintiffs identify 18 instances at Ms. Thompson's deposition where counsel for KU Health objected and instructed her to not answer, and they move to compel further testimony from Ms. Thompson as to the questions asked.[26] Plaintiffs argue all the questions Ms. Thompson was instructed not to answer were within the appropriate scope of the jurisdictional discovery allowed under the Court's Order and she should have answered. Plaintiffs also allege counsel for KU Health repeatedly interrupted the deposition with improper speaking objections that were argumentative, suggestive, and rose to the level of coaching the witness.

KU Health argues, to the contrary, that the questions where counsel instructed the witness not to answer were outside the scope of the limited jurisdictional discovery allowed by the Court. KU Health maintains its counsel appropriately instructed Ms. Thompson not to answer questions, and in particular, that KU Health interpreted the Court's Status Conference Order as setting the narrow scope of whether Clinician accessed Plaintiffs' plastic surgery photographs through KU Health's EMR system. KU Health also argues some of these questions would be inappropriate at any stage of the litigation and that Plaintiffs previously conceded they were outside the scope of jurisdictional discovery.

---

[26] *See* Pl. Dep. Excerpt chart (Dkt. 61-2) and Thompson rough draft Dep. Tr. (Dkt. 55-1 at 4–200) (sealed). The Court notes the specific page and line numbers on the "rough draft" transcript attached to Plaintiffs' motion (Dkt. 55-1) which are cited in the Pl. Dep. Excerpt chart differ from those on the final version attached to KU Health's response (Dkt. 58-3). The Court will reference the final version of the Thompson transcript filed at Dkt. 58-3 (and provided in full to the Court thereafter) unless otherwise indicated.

**IV.        Applicable Law Regarding Deposition Objections**

Federal Rule of Civil Procedure 30(c)(2) governs deposition objections. It provides that an objection made during a deposition must be stated "concisely in a nonargumentative and nonsuggestive manner."[27] While the objection must be stated on the record, "the examination still proceeds; the testimony is taken subject to any objection."[28] Under Fed. R. Civ. P. 30(c)(2), a deponent may be instructed not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."[29] Relevance is not an appropriate basis to instruct a witness not to answer a question.[30]

The District of Kansas Deposition Guidelines augment the rules and "provide ground rules for an integral piece of the modern federal court lawsuit."[31] Guideline 5(a) covers deposition objections and states:

> Objections shall be concise and shall not suggest answers to or otherwise coach the deponent. Argumentative interruptions will not be permitted. The only objections that should be asserted are those involving privilege or work product protection or some matter that maybe remedied if presented at the time, such as an objection to the form of the question or the responsiveness of the answer. Other objections shall be avoided unless the deposition is being taken for the express purpose of preserving testimony.[32]

---

[27] Fed. R. Civ. P. 30(c)(2).

[28] *Id.*

[29] *Id.*

[30] *See Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("It is inappropriate to instruct a witness not to answer a question on the basis of relevance.").

[31] *Cerda v. Cillessen & Sons, Inc.*, No. 19-1111-JWB, 2020 WL 4500721, at *2 (D. Kan. Aug. 5, 2020) (citing *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-md-2785-DDC, 2018 WL 6617105, at *1 (D. Kan. Dec. 14, 2018)). "These Guidelines aren't aspirational," but mandatory." *Cerda*, 2020 WL 4500721, at *2.

[32] D. Kan. Dep. Guidelines, https://www.ksd.uscourts.gov/deposition-guidelines.

10

District of Kansas Deposition Guideline 5(b) allows counsel to direct or request that a deponent

not answer a question in limited circumstances:

> (1) counsel has objected to the question on the ground that the answer is protected
> by privilege, work product immunity, or a limitation on evidence directed by the
> Court; or (2) the direction not to answer is necessary to allow a party or deponent
> to present a Fed. R. Civ. P. 30(d) motion to the Court.[33]

If a deponent fails to answer a question asked under Rule 30, the examining party may

move for an order compelling an answer under Rule 37(a)(3)(B)(i). Rule 37(a)(C) expressly

contemplates that such a motion may be brought after the deposition concludes.[34]

**V.      Whether the Status Conference Order Contained a "Limitation Ordered by the Court" as Contemplated by Rule 30(c)(2)**

Plaintiffs allege the repeated instructions by counsel for KU Health directing Ms.

Thompson to not answer deposition questions violated Rule 30(c)(2) and fall outside the narrow

exceptions provided by that Rule. They argue the Status Conference Order does not constitute the

type of "limitation ordered by the court" that authorizes instructing a deponent to not answer. Even

if it did, they argue all the questions fell squarely within the scope of jurisdictional discovery the

Court authorized.

KU Health argues to the contrary that the Status Conference Order limited the jurisdictional

discovery sought by Plaintiffs to the precise fact question of "whether or not the Clinician accessed

the plastic surgery photographs."[35]

The Status Conference Order did contain a Rule 30(c)(2) "limitation ordered by the court"

---

[33] *Id.*

[34] *See* Fed. R. Civ. P. 37(a)(3)(C) ("When taking an oral deposition, the party asking a question may complete or adjourn the examination before moving for an order.").

[35] Thompson Dep. Tr. 49:5–8 (Dkt. 58-3).

that would authorize instructing a deponent not to answer. The Court, however, disagrees with KU Health's overly narrow interpretation of the Status Conference Order.  The Status Conference Order set out a "highly summarized" view of the scope of jurisdictional discovery, and then directed the parties to do the following: (1) confer in good faith regarding their jurisdictional discovery disputes *before* KU Health served its discovery responses, answers, and objections to Plaintiffs' RFPs, Interrogatories, and Rule 30(b)(6) notice; and (2) then confer again in good faith regarding their jurisdictional discovery disputes *after* KU Health served its responses, answers, and objections by December 22, 2025.  Finally, if any disputes remained, Plaintiffs were required to file any motion to compel within 30 days after KU Health served its responses, answers, and objections.

Rather than read the Status Conference Order as a whole, KU Health's counsel cherry-picked a single line and ran with it throughout the deposition to direct their witness not to answer. This was inappropriate. Deposition questions regarding KU Health's argument that it did not possess or have access to Plaintiffs' plastic surgery photographs were within the appropriate scope of jurisdictional discovery. But so too were questions inquiring into statements included in the Thompson Declaration (which was offered in support of KU Health's motion to dismiss). And so too were questions encompassed by the four topics listed in Plaintiffs' Amended 30(b)(6) Notice. KU Health's interpretation of the scope of jurisdictional discovery was too narrow.

Had the parties reached out to chambers at their first dispute at the deposition—as they considered doing—this motion practice could have been avoided. But instead of doing so, the parties agreed to (and then did not) "keep a list" of the questions and topics where KU Health's counsel was instructing the witness not to answer. This was not the most efficient manner of proceeding and is now going to result in a second deposition for Ms. Thompson to answer some

12

of the questions she was instructed to not answer, as discussed below.

**VI.      Deposition Questions Ms. Thompson Was Instructed to Not Answer**

Plaintiffs identify 18 instances where KU Health's counsel directed the witness not to answer a deposition question. They maintain these questions, identified in Exhibit 5 (Dkt. 61-2) to Plaintiffs' Motion to Compel, were within the limited scope of jurisdictional discovery and necessary to develop the factual record related to Plaintiffs' standing to bring claims against KU Health. Plaintiffs assert three reasons why these questions were within the scope of jurisdictional discovery:  (1) they pertain to specific paragraphs in Ms. Thompson's Declaration; (2) they relate to a Rule 30(b)(6) deposition topic; and/or (3) they relate to documents produced by KU Health in the course of jurisdictional discovery.

**A.      Question No. 1**

Question No. 1 asked Ms. Thompson: "Using his credentials, [Clinician] could look up the information of any patient, even if he had no treatment relationship with the patient. Correct?"[36] KU Health's counsel instructed Ms. Thompson not to answer on the basis that this question sought information outside the scope of the jurisdictional discovery. Plaintiffs assert this question falls within the scope of the jurisdictional discovery, particularly Ms. Thompson's statements in her Declaration at paragraph 8 regarding the Clinician's credentials and responsive to Topic No. 1 of the Amended 30(b)(6) Notice served upon KU Health.

The Court agrees with Plaintiffs. The question seeks clarification of the information Clinician could access with his credentials. KU Health put this topic at issue in its Motion to Dismiss, and particularly in Paragraph 8 of the Thompson Declaration, which states: "As part of [Clinician's] employment, [KU Health] provided Clinician with credentials to access [KU

---

[36] Thompson Dep. Tr. 46:24–47:3.

Health's] [EHR] system licensed by Defendant [Epic]. KU Health did not provide Clinician with credentials to access any other health record systems."[37] In addition, Topic No. 1 in the Amended 30(b)(6) Notice sought information about "[t]he electronic Systems that the Clinician had access to at KU Health and the Clinician's credentials to access Lawrence Memorial Hospital's EHR System."[38] This topic is appropriately tailored to the jurisdictional discovery and, in any event, there is no indication that KU Health objected to Topic No. 1 in the Amended 30(b)(6) Notice. Thus, this deposition question inquiring about Clinician's credentials is within the scope of jurisdictional discovery. The Court overrules KU Health's outside-the-scope objection to Question No. 1.

B.     Question Nos. 2, 3 and 5

Question No. 2 asked Ms. Thompson: "And even a single instance of unauthorized access to that information would be considered significant. Right?"[39] Question No. 3 asked: "From a patient's perspective, unauthorized access to this kind of information would be a serious breach of confidentiality. Right?"[40] Question No. 5 asked: "As a privacy officer … at KU, you'd agree that when there's unauthorized access to sensitive [protected] health information, patients should be informed of the full material facts about what information was accessed. Correct?"[41]

KU Health's counsel instructed Ms. Thompson not to answer all three questions. Plaintiffs assert they all fall within the scope of the jurisdictional discovery, particularly Ms. Thompson's

---

[37] Thompson Decl. (Dkt. 32-1) at ¶ 8.

[38] Pl. Second Am. Notice of Rule 30(b)(6) Dep. (Dkt. 61-1).

[39] Thompson Dep. Tr. 71:4–7.

[40] *Id.* at 72:3–6.

[41] *Id.* at 77:15–20.

statements in her Declaration at Paragraph 12 regarding Clinician's unauthorized access of information.

The Court again agrees with Plaintiffs. The questions seek clarification about the information accessed by Clinician. KU Health put this information at issue in its Motion to Dismiss, and particularly in paragraph 12 of the Thompson Declaration, which states:

> On April 20, 2023, [KU Health] sent letters to certain individuals, which notified them that Clinician accessed their information. [] The Clinician only accessed the following types of information through the [KU Health] EHR System: name, date of birth, address, phone number, insurance and billing information, social security number, and clinical information.[42]

There can be no serious dispute that the information KU Health admits was accessed by Clinician falls within the scope of whether Plaintiffs have standing to assert their claims against KU Health. The Court overrules KU Health's outside-the-scope objections to Question Nos. 2, 3 and 5.

### C.      Question No. 4

Question No. 4 asked Ms. Thompson: "The seriousness of all this is precisely why there is a federal law governing medical information. Correct?"[43] KU Health's counsel instructed the witness not to answer. Plaintiffs assert this question falls within the scope of the jurisdictional discovery because it was related to a topic in the Amended 30(b)(6) Notice, though Plaintiffs do not identify which topic in their Motion.

At the deposition, Plaintiffs' counsel argued that this question related to Topic No. 3, which sought information from KU Health about "Your investigation into or determination of where Plaintiffs' Plastic Surgery Photographs were stored and how You determined the Clinician did not

---

[42] Thompson Decl. (Dkt. 32-1) at ¶ 12.

[43] Thompson Dep. Tr. 72:21–23.

access Plaintiffs' Plastic Surgery Photographs via Your EHR System."[44] As stated in the Amended 30(b)(6) Notice, this topic is appropriately tailored to the jurisdictional discovery and, in any event, there is no indication that KU Health objected to Topic No. 3. However, the Court is not persuaded that this particular question falls within Topic No. 3. The Court therefore sustains KU Health's outside-the-scope objection to Question No. 4.

### D.    Question No. 6

Question No. 6 asks Ms. Thompson: "And so based on that, it's possible that [Clinician's] access to clinical information could have included medical images or previews or image-related content. Right?"[45]

KU Health's counsel instructed Ms. Thompson not to answer. Plaintiffs assert this question falls within the scope of the jurisdictional discovery, particularly Ms. Thompson's statements in her Declaration referring to "Plastic Surgery Photographs," which—though capitalized—is not a defined term. The term is used in paragraphs 13, 16, 17, 20, 21, 24, 25, 28, 29, 32, 33, 35, 38, 39, 41, 42, and 45.

The Court finds that Question No. 6 falls within the scope of the jurisdictional discovery. The question seeks clarification about the information that could have been accessed by Clinician. KU Health put this information at issue in its Motion to Dismiss, and particularly in the above-referenced paragraphs of the Thompson Declaration. The Court overrules KU Health's outside-the-scope objection to Question No. 6.

---

[44] Pl. Second Am. Notice of Rule 30(b)(6) Dep. (Dkt. 61-1).

[45] Thompson Dep. Tr. 86:8–11.

**E.     Question Nos. 7 and 9**

Question No. 7 asked Ms. Thompson: "Would you consider any of this [demographic and clinical] information not sensitive?"[46] Question No. 9 asked her view on whether a driver's license includes "highly sensitive personal information."[47]

KU Health's counsel instructed the witness not to answer both questions. Plaintiffs assert both questions fall within the scope of the jurisdictional discovery because they are related to a document produced by KU Health during the course of jurisdictional discovery.

Like Question Nos. 2, 3 and 5, these questions seek clarification about the information accessed by Clinician. These questions are within the scope of whether Plaintiffs have standing to assert their claims against KU Health. The Court overrules KU Health's outside-the-scope objections to Question Nos. 7 and 9.

**F.     Question Nos. 8 and 10**

Question No. 8 asked Ms. Thompson: "Are there any alerts in KU's system that would have been triggered by someone like [Clinician] accessing patient information not related to his job duties?"[48] Question No. 10 asked: "Accessing patient records from home would raise additional potential privacy and security concerns compared to if he accessed [them] … at a clinic. Right?"[49]

---

[46] *Id*. at 106:24–25.

[47] *Id*. at 139:9–11.

[48] *Id*. at 132:21–24.

[49] *Id*. at 162:5–9.

KU Health's counsel instructed the witness not to answer both questions. Plaintiffs assert these questions fall within the scope of the jurisdictional discovery because they were related to documents produced by KU Health during the course of jurisdictional discovery.

At the deposition, when discussing Question No. 8, Plaintiffs' counsel stated: "We think this is entirely relevant, within the scope of jurisdictional discovery,"[50] and KU Health's counsel responded: "How?" Plaintiffs' counsel declined to elaborate. The Court has the same question as KU Health's counsel. While perhaps relevant to the case as a whole, the Court is not persuaded that questions inquiring into KU Health's potential discovery of Clinician's activity fall within the limited scope of jurisdictional discovery and whether Plaintiffs have standing to assert their claims against KU Health. Nor is the Court persuaded by Plaintiffs' argument justifying these questions because they simply relate to documents that KU Health may have already produced as part of jurisdictional discovery. KU Health's production of documents, even if in response to a request for jurisdictional discovery, does not necessarily render deposition questions related to all matters or issues discussed in those documents within the scope of jurisdictional discovery. The Court sustains KU Health's outside-the-scope objections to Question Nos. 8 and 10.

### G.    Question Nos. 11, 12, 16, and 18

Question No. 11 asked Ms. Thompson: "Did KU [Health] report [Clinician] to law enforcement?"[51] Question No. 12 asked: "Did KU [Health] do anything to independently verify those statements in [Clinician's] declarations before [Clinician] signed them?"[52] Question No. 16

---

[50] *Id*. at 133:12–13.

[51] *Id*. at 164:9.

[52] *Id*. at 172:15–17.

asked: "Why did KU [Health] submit this report to the Kansas Board of Healing Arts?"[53] Question No. 18 asked: "Why did KU [Health] wait until June 8, 2023 to submit the report?"[54]

KU Health's counsel instructed the witness not to answer all four questions. Plaintiffs assert these questions fall within the scope of the jurisdictional discovery because they were related to documents produced by KU Health during the course of jurisdictional discovery. As to Question No. 11, Plaintiffs also argue the question followed up on the witness's prior testimony; and as to Question Nos. 16 and 18, Plaintiffs argue the questions fall within the deposition topics (though they don't state which ones).

The Court is not persuaded that these questions fall within the scope of the jurisdictional discovery, as they do not appear to inquire on issues relevant to whether Plaintiffs have standing to assert their claims against KU Health. Again, though perhaps relevant to the case as a whole, the Court is not persuaded that questions about KU Health's subsequent actions are within the limited scope of jurisdictional discovery. The Court therefore sustains KU Health's outside-the-scope objections to Question Nos. 11, 12, 16, and 18.

## H.  Question No. 13

Question No. 13 asked Ms. Thompson: "Does Maize have an alert system when it detects risky activity?"[55] KU Health's counsel instructed the witness not to answer. Plaintiffs assert the question falls within the scope of the jurisdictional discovery because it was related to documents produced by KU Health during the course of jurisdictional discovery.

---

[53] *Id*. at 175:4–5.

[54] *Id*. at 198:1–2.

[55] *Id*. at 198:1–2.

Again, while perhaps relevant to the case as a whole, the Court is not persuaded that additional questions about the Maize monitoring system fall within the limited scope of jurisdictional discovery. The Court sustains KU Health's outside-the-scope objection to Question No. 13.

## I.      Question Nos. 14 and 17

Question No. 14 asked Ms. Thompson: "Can you please walk me through the steps that KU [Health] did to determine whether [Clinician's] access was job related for each patient?"[56] Question No. 17 asked: "Hadn't KU [Health] determined that there were many instances of [Clinician] accessing KU patients' EHR unrelated to his job duties?"[57]

KU Health's counsel instructed the witness not to answer both questions. Plaintiffs assert the questions fall within the scope of the jurisdictional discovery because they are related to documents produced by KU Health during the course of jurisdictional discovery, and also because they fall within a deposition topic (though they don't state which one).

Topic No. 2 in the Amended 30(b)(6) Notice sought information from KU Health about "[t]he steps [it] took to confirm that the Clinician did not access Plaintiffs' Plastic Surgery Photographs via [its] EHR System and the basis for [its] understanding that the Clinician accessed Plaintiffs' Plastic Surgery Photographs through Lawrence Memorial Hospital's EHR System."[58] Topic No. 3 sought information about KU Health's "investigation into or determination of where Plaintiffs' Plastic Surgery Photographs were stored and how [it] determined the Clinician did not

---

[56] *Id*. at 179:15–18.

[57] *Id*. at 196:23–197:1.

[58] Pl. Second Am. Notice of Rule 30(b)(6) Dep. (Dkt. 61-1).

access Plaintiffs' Plastic Surgery Photographs via [its] EHR System."[59] Both topics are appropriately tailored to the jurisdictional discovery and, in any event, there is no indication that KU Health objected to them.

The Court is persuaded that these questions fall within the scope of the jurisdictional discovery. Like many of the questions discussed above, they seek clarification about the information accessed by Clinician, a topic that falls within the scope of whether Plaintiffs have standing to assert their claims against KU Health. The Court overrules KU Health's outside-the-scope objections to Question Nos. 14 and 17.

### J.    Question No. 15

Question No. 15 asked Ms. Thompson whether KU Health received "follow-up actions" from patients after the letter to them went out.[60] KU Health's counsel instructed the witness not to answer. Plaintiffs assert the question was a follow-up, and in any event, it was related to documents produced by KU Health during the course of jurisdictional discovery.

Again, while perhaps relevant to the case as a whole, the Court is not persuaded that this additional inquiry into whether patients reached out to KU Health after they received notice of Clinician's access of their information falls within the limited scope of jurisdictional discovery. The Court sustains KU Health's outside-the-scope objection to Question No. 15.

### VII.    Reconvened Deposition of Ms. Thompson

For the reasons set out above, the Court will order KU Health to produce Ms. Thompson for a second deposition to answer certain questions. Plaintiffs have also requested an order directing that Ms. Thompson's continued deposition proceed "subject only to proper objection,

---

[59] *Id*.

[60] Thompson Dep. Tr. 186:6–8.

prohibiting instructions not to answer except as expressly permitted by Rule 30(c)(2) and speaking objections that are argumentative, suggestive, or coach the witness."[61] As instructed by District of Kansas Deposition Guideline 5(a), "[o]bjections shall be concise and shall not suggest answers to or otherwise coach the deponent." Objections which suggest answers to or otherwise coach the witness are commonly called "speaking objections."[62] An objection that a question calls for speculation is a foundation objection and not a form objection. It also tends to coach the witness to respond that he does not know the answer.[63]

The Court's review of the entire Thompson deposition transcript revealed several instances where counsel for KU Health made improper speaking objections that tended to (and often successfully did) coach the witness. For example, on page 39 of the deposition transcript, counsel for KU Health objected to form and then added: "To the extent you understand the question." The witness, responding to counsel's statement, then stated: "Yeah, can you restate that?" Counsel did restate the question, and counsel for KU Health again objected to form and then added "Lacks foundation." The witness, again, apparently responding to KU Health counsel's statement, then testified: "I cannot – I cannot answer that with certainty."[64] Counsel's statements at the end of these two objections ("To the extent you understand the question" and "Lacks foundation") both constituted improper speaking objections that suggested answers and tended to coach the witness.

A few pages later, on page 42 of the deposition transcript, counsel for KU Health again objected to form and then added: "Outside the scope. To the extent you know." The witness,

---

[61] Pl. Mot. (Dkt. 55) at 13.

[62] *Cincinnati Ins. Co. v. Serrano*, No. 11-2075-JAR, 2012 WL 28071, at *4 (D. Kan. Jan. 5, 2012).

[63] *Id.*

[64] Thompson Dep. Tr. 39:11–23.

responding to counsel's statement, then stated "I don't – I don't know."[65] Again, counsel's statement at the end of the objection ("To the extent you know") constituted an improper speaking objection that suggested an answer and tended to coach the witness.

On page 53 of the deposition transcript, Plaintiffs' counsel asked KU Health's counsel to stop making improper speaking objections, and KU Health's counsel refused:

> Q (By Mr. Stueve) Okay. But that statement doesn't mean that KU employees like [Clinician] never accessed other health records systems as part of their work with KU. Right?
> MS. GREEN: Objection, form. You can answer if you understand.
> MR. STUEVE: Cate, so make your objection, but the extra stuff at the end, I mean, You're coaching the witness, if you understand, that kind of thing.
> MS. GREEN: I obviously disagree.[66]

The Court agrees with Plaintiffs. KU Health counsel's statement at the end of the objection ("You can answer if you understand") again constituted an improper speaking objection that suggested an answer and tended to coach the witness.

As a final example, on page 87 of the deposition transcript, Plaintiffs' counsel asked whether the clinical information that KU Health concedes Clinician accessed could have included "image-related content," and KU Health's counsel objected that she did not know what he meant by "image-related content":

> Q (By Mr. Stueve) With respect to the Plaintiffs in this case in particular that you've testified you were part of the investigation into, that paragraph of that declaration, those paragraphs that you made, you're not saying that those Plaintiffs' clinical information didn't contain any image-related conduct. Right?
> MS. GREEN: Objection.
> Q (By Mr. Stueve) Content?
> MS. GREEN: Objection, form. I don't know what you mean by images, image content.
> MR. STUEVE: I know you don't, but the question is to the witness.

---

[65] *Id*. at 42:17–19.

[66] *Id*. at 53:3–13.

MS. GREEN:· Same objections.[67]

KU Health's counsel's statement at the end of the objection that she did not know what the question was referring to also constituted an improper speaking objection that suggested an answer and attempted to coach the witness.

These illustrative examples should guide KU Health's counsel on what not to do at the reconvened deposition of Ms. Thompson. Counsel should be particularly mindful of District of Kansas Deposition Guideline 5(a) and keep their objections "concise." Deposition objections should not suggest answers to or otherwise coach the deponent.

## VIII.    Costs of Reconvened Deposition and Expenses Incurred Related to this Motion

Plaintiffs request the Court order KU Health to bear the costs of Ms. Thompson's reconvened deposition, including court reporter and transcript fees, as remedial relief necessitated by its improper deposition conduct. In its response, KU Health requests the Court order Plaintiffs to pay its attorney's fees associated with preparing its response in opposition to the motion under Fed. R. Civ. P. 37(a)(5)(B).

As provided by Fed. R. Civ. P. 30(d)(2), the court "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." In this case, the Court finds KU Health's repeated objections during the deposition did impede and delay the fair examination of Ms. Thompson. The Court therefore will require KU Health to bear the costs of Ms. Thompson's reconvened deposition because it was its counsel's objections and instructions not to answer that resulted in the need to reconvene Ms. Thompson's deposition.

If a party files a motion to compel under Rule 37(a)(3)(B)(i) based upon a deponent's

---

[67] *Id*. at 87:1–14.

failure to answer a question asked under Rule 30, and the motion to compel is granted in part and denied in part, the court may "apportion the reasonable expenses for the motion" under Rule 37(a)(5)(C). Here, the Court orders that Plaintiffs and KU Health shall bear their own expenses, including attorney's fees, incurred related to the briefing of this motion.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Further Deposition Testimony and for Remedial Relief Regarding Defendant KU Health's Improper Deposition Objections (Dkt. 55) is **granted in part and denied in part**. Defendant KU Health's outside-the-scope objections are sustained as to Question Nos. 4, 8, 10–13, 15, 16, and 18, and overruled as to Question Nos. 1–3, 5–7, 9, 14, and 17. Defendant KU Health shall produce Ms. Thompson for her reconvened deposition to answer Question Nos. 1–3, 5–7, 9, 14, and 17 and related follow-up questions.

**IT IS FURTHER ORDERED** that the deposition of Ms. Thompson shall be reconvened **within thirty (30) days of this Order** at a mutually-agreed date, time, and location. The reconvened deposition shall not exceed **four (4) hours** in length.

**IT IS FURTHER ORDERED** that KU Health shall bear the costs of the reconvened deposition, including court reporter and transcript fees. Each party shall bear its own attorney's fees related to the reconvened deposition. Plaintiffs and KU Health shall also bear their own expenses, including attorney's fees, incurred related to the briefing of this motion.

IT IS SO ORDERED.

Dated April 23, 2026, at Kansas City, Kansas.

_____
Jennifer   B.   Wieland
U. S. Magistrate Judge

25